## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**CHRISTINE L STAGGS**,

        Debtor.

Case No. **12-60517-13**

---

**GREEN TREE SERVICING LLC**,

        Plaintiff.

-vs-

**JAMES FLEISHHAUER**,

        Defendant.

Adv No. **13-00039**

## MEMORANDUM OF DECISION

At Butte in said District this 6th day of May, 2014.

Trial of this adversary proceeding to determine validity, priority and extent of liens was held at Missoula on March 26, 2014. The parties appeared represented by counsel. Witness testimony was heard and exhibits were admitted into evidence. After the conclusion of the parties' cases-in-chief the Court granted the parties time to file post-trial briefs, which have been filed and reviewed by the Court together with the record and applicable law. This matter is ready for decision. For the reasons set forth below, Judgment shall be entered against the Defendant/counterclaimant James Fleischhauer[1] ("Defendant") in favor of the Plaintiff Green

---

[1]The case docket has Defendant's name spelled "Fleishhauer" and has not been corrected.

1

Tree Servicing LLC ("Green Tree" or "Plaintiff") which shall provide that Defendant's lien against the above-named Debtor's residence is invalid and subordinate with respect to Green Tree's deed of trust based on Defendant's failure to comply with the requirements of Montana lien statutes.

Green Tree was represented at the hearing by attorney Mark M. Smith of Church, Harris, Johnson & Williams, P.C., of Great Falls. Plaintiff called the Debtor Christine L. Staggs ("Christine" or "Debtor"), her spouse Bill Staggs ("Bill"), and title insurance group attorney Dwight Bickel ("Bickel"), to testify. Defendant James Fleischhauer appeared and testified, represented by attorney K. Michael Sol of Sol & Wolfe Law Firm, PLLP, of Missoula. Green Tree's Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7,[2] 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and Defendant's Ex. A, B, C, D, F, H, I, J, K, M, and N, all were admitted into evidence. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file post-trial briefs, which have been filed and reviewed by the Court together with the record and applicable law.

The parties agree this Court has jurisdiction of this Chapter 7 case and adversary proceeding under 28 U.S.C. §§ 1334(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) to determine the validity, extent, or priority of liens. This Memorandum of Decision includes the Court's findings of fact and conclusions of law under F.R.B.P. 7052 (applying Fed. R. Civ. P. 52 in adversary proceedings).

## FACTS

The approved Pretrial Order ("PTO") (Document No. 53) sets forth the following facts:

    1. On or about March 14, 2008, GMAC Mortgage, LLC ("GMAC") made

---

[2]Ex. 7 consists of Ex. A, B, and C.

a loan in the principal amount of $220,000.00 to Christine Staggs. A deed of trust [Ex. 2] was recorded on or around April 1, 2008, at Instrument No. 200807134 in the Official Records of Missoula County (the "Deed of Trust"), against Mrs. Staggs' personal residence located at 420 SW Higgins, Missoula, MT, 59803, and more particularly described as Elms # 4, Lot 4, Block 5, Missoula, Montana, Missoula County (the "Staggs Residence").

2. Mrs. Staggs has not fully repaid her debt to Green Tree. GMAC filed a secured proof of claim in this case for $248,272.73 on July 19, 2012 (Claim # 14-1).  GMAC's payoff as of July 19, 2012 was $248,272.73. GMAC also filed a Notice of Post-petition Mortgage Fees, Expenses, and Charges on October 23, 2012.  GMAC filed a Notice of Transfer of Claim to Green Tree on February 19, 2013 (Doc. # 41).

3. James Fleischhauer filed a secured proof of claim in the bankruptcy in the amount of $242,014.20 on August 6, 2012 (Claim # 15-1). Mr. Fleischhauer bases his Proof of Claim on a promissory note for $150,000.00 to Mrs. Staggs and Mrs. Staggs's husband (the "Promissory Note"), and a subsequent lien on the Staggs Residence (the "Fleischhauer Lien"). No payments have been made by the Staggs to Mr. Fleischhauer.

4. The Fleischhauer Lien, labeled a "Mechanic Lien," and accompanying Promissory Note were recorded on or around January 7, 2008, at Instrument No. 200800375 in the Official Records of Missoula County. The Fleischhauer Lien was not signed by the Staggs. However, the promissory note that was signed by the Staggs was recorded with the "Mechanic's Lien."

5. The Staggs Residence has been listed as real property in the bankruptcy. According to bankruptcy filings from Mrs. Staggs, the current value of the Staggs Residence is at most $179,000. Because of this, there is likely not enough equity in the home to pay off both the Green Tree Deed of Trust and the Fleischhauer lien. Thus, Green Tree filed this adversary proceeding to determine priority between the Green Tree Deed of Trust and the Fleischhauer lien.

6. Neither Defendant James Fleischhauer nor Christine L. Staggs contest the validity of Green Tree's Deed of Trust. Mr. Fleischhauer contests that the Fleischhauer Lien is a valid lien with priority over Green Tree's lien.

7. The Promissory Note, signed by the Staggs, states that "SECURITY of this loan will be the GRANTEES' home at 429 SW Higgins Street in Missoula, Montana.  Legal description of this property is Elms #4, Lot 4, Block 5."

Additional facts can be gleaned from the testimony and exhibits.  Christine's debt to Defendant originated from an agreement between the Defendant and Christine's spouse Bill. Defendant testified that he has known Bill since he was a "tyke" and had done business with Bill in the past.

Bill testified that Defendant contacted him with a business proposition to perform hurricane recovery work in Mississippi after Hurricane Katrina.  Defendant owned several pieces of heavy equipment and supplies located in Mississippi, and Bill testified that Defendant told Bill that there was a lot of work available.   Defendant testified that he was working in Louisiana after Katrina, and that Bill called him from Mississippi where Bill was working with his cousin. Defendant testified that Bill told him that there was lots of work and equipment available for sale in Mississippi.  Defendant and his wife spoke with the people who owned equipment in Mississippi, and he arrived at an agreement with Bill.

Christine had no knowledge of Bill's agreement with Defendant except that it was a "big job."  She testified that Bill was gone for several months approximately in 2006 and returned before Christmas.  Christine testified that Bill did not talk to her about purchasing equipment or a business from Defendant, and that Bill did not bring any equipment home from Mississippi.

Defendant described his deal with Bill as "kind of a partnership" wherein Defendant would purchase the equipment and loan it to Bill to use, and when Bill got paid he could pay Defendant for the equipment.[3]  Bill testified that he and Defendant began discussing Bill's purchase of Defendant's equipment about a month after Bill arrived in Mississippi, but "that had

---

[3]Defendant and Bill had other dealings which were unrelated to the note.  Defendant testified that he sold a boat and Corvette to Bill, and then bought them back.

nothing to do with the promissory note." Defendant disagreed, and testified that the promissory note covered the equipment in Mississippi.

Bill testified that he traveled to Mississippi and worked on recovery, using Defendant's equipment. He testified that Defendant did not pay him a salary, but that Defendant gave Bill $1,000 for food in Mississippi and agreed to keep Bill's house payment current, and Defendant made a house payment for Bill in March of 2006 before the promissory note was signed. Ex. K. Defendant testified that he wired Bill the $1,000, and that he made only one house payment for Bill because Bill asked him to. Bill testified that Defendant wired the $1,000 from Mississippi to Missoula, where Bill was, and that Defendant already was in Mississippi.

Bill testified that he has not been paid for his work in Mississippi other than the house payment which Defendant paid. Defendant testified that he did not work on the Mississippi work site, but that he made a trip to Gulf Port, Mississippi, where he stayed for 4 months. Bill testified that Defendant told him he was "fed up" with Mississippi, and that Defendant offered to sell Bill his equipment on contract and to provide Bill with a contact who had work available in Mississippi. Bill testified that he agreed to purchase Defendant's equipment located in Mississippi because of Defendant's representation that he had work available in Mississippi, and Bill agreed that Debtor's residence would be security for the agreement. Under cross examination Defendant denied telling Bill that there was work in Mississippi.

Bill testified that he telephoned the contact Defendant had given him and told the contact that Bill was ready to go to work. He testified that the contact told him that the contact had never set foot in Mississippi, and that the contact had no work for Bill.

Christine's debt to Defendant is based on the promissory note and addendum, Ex. A and

5

C, also admitted into evidence as part of Ex. 7.  Defendant testified that Christine had no role in negotiating the note, and that Defendant's wife drafted the promissory note.  Bill testified that they reached agreement on the note in Missoula.

The note and addendum were signed by Christine and Bill on August 31, 2006, according to the notarizations.  Ex. A, C, 7.  Christine testified that she signed the note at Bill's request.  Defendant and his wife Candace Fleischhauer ("Candace") signed the note on September 8, 2006.  The note provides explains that Defendant, as Grantor, "is extending this sum of money for payment of several pieces of equipment in Montana and Gulfport, MS."  Ex. A, 7.  The amount of the note was $150,000 plus interest at eight percent per annum (8%).  Payments were deferred for 60 months, with another 12 month automatic extension granted upon interest being paid, after which payment was to be made in full.  Christine testified that the extension made the due date of the note sometime in August or September of 2012.  Defendant testified that he gave the Staggs 5 years to pay the note.

The note includes a provision that the Grantee "agrees this note will be exempt and not be included in any bankruptcy actions during the duration of this note."[4]  Next, the note provides: "Security of this loan will be GRANTEES['] home at 429 SW Higgins Street in Missoula Montana.  Legal description of this property is Elms #4, Lot 4, Block 5."  Ex. A.  Christine testified that 429 SW Higgins Street is not her address, and that she did not intend for the note to create a lien.

_____

[4]Such a provision waiving rights under the Bankruptcy Code would be suspect as akin to an ipso facto clause, and rejected as against public policy embodied in the Bankruptcy Code. Bankruptcy policy generally prevents enforcement of *ipso facto* clauses.  *See, e.g.*, 11 U.S.C. § 365(b)(2) & (e); 3 COLLIER ON BANKRUPTCY ¶ 365.08[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2013).

She testified that she signed the note at Bill's request, but that she did not receive any of the $150,000 face amount of the note. Defendant testified that he did not ask Bill for a downpayment for the equipment because he knew Bill was working hard in Mississippi, and Defendant was hoping for the best for Bill.

The addendum to the note, Ex. C, is signed by Bill and Christine and notarized as of August 31, 2006. The addendum provides that the "recording of the Lien to the 420 SW Higgins, Missoula Montana property . . . will be deferred for TWENTY FOUR (24) months as agreed to by GRANTORS. GRANTEES therefore promise not to sell or record additional liens to this property."

Christine testified that the 24 month period on Ex. C would expire in September of 2008, but that the Defendant recorded the "Mechanic Lien" before the note became due. Ex. B, 7. Christine testified that the addendum did not apply to her because the deal between Bill and Defendant fell through and she never received any money from Defendant.

She testified that Bill never received money, equipment or a job from Defendant. Bill agreed and testified that he did not ever pay Defendant for Defendant's equipment in Mississippi, that he did not receive the equipment or a bill of sale for the equipment from Defendant, and that Bill did not ever obtain title to the equipment or ever claim the equipment on his tax returns. Bill testified that, when he learned that there was no job waiting in Mississippi as Defendant had told him, he told Defendant that he could have his equipment back, but that Defendant did not want to go to Mississippi and get it. Bill testified that the equipment in Mississippi which was the subject of the purchase agreement still belongs to Defendant.

Defendant disagreed. He testified that he gave Bill all the equipment titles in 2006, and

7

that Defendant did not retain copies of the titles. Defendant admitted on cross examination that he did not claim the equipment on his tax returns. Bill admitted on re-cross examination that he did not ask Defendant for the equipment titles.

On September 18, 2007, Christine signed a "Promisary [sic] Note" in the amount of $225,000 to Kelly L. Youbles, and agreed to let Youbles put a lien against "Elms addition 4 Lot 4 Block 5 Missoula county, Missoula, Montana until such notice of lien is paid in full." Ex. D is that note, and Christine was recorded that note on September 18, 2007. Christine testified that Youbles is her sister and that she signed Ex. D at her sister's request, but that Youbles never gave her any money and did not follow through on the loan, and Christine forgot about it. Asked on direct examination about her agreement on Ex. C not to record liens on the property, Christine answered that she did not record a lien, she recorded the note to her sister from whom she never received any money.

Christine testified that did not have any input into Ex. B. Ex. B shows that the Mechanic Lien was signed by Defendant and Candace on December 31, 2007, and that the lien was recorded on January 7, 2008, along with the promissory note. Ex. 7. Defendant testified that he recorded the Mechanic Lien because he discovered that the note to Youbles, Ex. D, had been recorded, and Defendant believed that Christine was in breach of the note.

The Mechanic Lien, Ex. B, states in the first sentence below the title that Defendant and his spouse "claim a mechanics lien pursuant to Title 71, Chapter 3[5] of the Montana Code Annotated" ("MCA"). The Mechanic Lien claims a lien against 420 SW Higgins owned by Christine, based on the promissory note. Ex. 7.

---

[5]Chapter 3 of MCA Title 71 provides for "Liens," including construction liens (Part 5).

Christine did not sign the Mechanic Lien, and neither did Bill. Ex. B, 7. She testified that she would not have signed it. The Mechanic Lien is not notarized. It does not include an acknowledgment by a notary.

Christine testified that the loan from Green Tree paid off the first mortgage held by Option One Mortgage Corp in March of 2008. Ex. 16 is the HUD settlement statement dated March 14, 2008, for the loan. Dwight Bickel is counsel for the title insurance group of companies which insured Green Tree's loan. He testified that most promissory notes do not create a lien, and that if a note did include a conveyance it would create a risk for the title company, and the title company would require a release. Bickel testified that Ex. 16 shows that two prior liens were paid off by the Green Tree loan to Christine. He testified that every time a title company insures a mortgage it runs up against "last minute" liens, and that equitable subordination is a theory which applies if the parties have a mutual expectation of performance and actual payoff of another debt. Defendant did not cross examine Bickel.

Christine testified that she did not receive a demand letter from Defendant, or a complaint seeking payment, before she filed her bankruptcy petition. Bill also testified that he never received a demand letter, and that Defendant did not obtain a judgment on the note. Christine testified that she never made a payment on the promissory note, and that the Defendant never told her that payment was due on the note. Defendant testified that he turned it over to his attorney.

Christine testified that she received a notice in the mail from the Defendant regarding the Mechanic Lien in January 2008. She asked Bill about it and he told her not to worry. Bill testified that he telephoned Defendant, and that Defendant told him the note was in his safe and

that he would "tear it up" and "work something else out."  Defendant denies that he told Bill he would tear up the note, and Defendant testified that he did not speak with Bill about the Mechanic Lien before Bill contacted an attorney.

On cross examination Bill admitted that he never gave Defendant a writing stating that he wanted to rescind the equipment purchase agreement.  Bill testified that he never intended to have a lien placed on his home, and that he told the title company and Defendant that his lien was no good.

Bill contacted an attorney, Thomas C. Orr ("Orr"), who sent Defendant and his wife a letter, Ex. I, dated February 22, 2010.  Orr wrote that payment on the note was not due when Defendant recorded the Mechanic Lien, that in Orr's belief the lien is invalid and has damaged the Staggs' ability to refinance, and he demanded that Defendant release the lien.  Ex. I. Defendant's attorney Sol responded to Ex. I on February 25, 2010, with Ex. J in which Sol did not agree to release Defendant's lien.

Christine filed her Chapter 13 petition on April 4, 2012.  Her Schedule A, Ex. 13, lists her residence at 420 SW Higgins as her own property with a current value in the sum of $179,000 securing debt in the total amount of $403,764.28.  Christine testified that she still agrees with her scheduled value.  Schedule C claims the residence exempt under homestead statue up to a value of $250,000.

Schedule D lists the secured claims of GMAC, Defendant and a third judgment lien creditor with total claims of $403,764.28 secured by Debtor's residence.  Debtor marked the box "Disputed" with respect to Defendant's secured claim on Schedule D.  Christine testified that she listed Defendant's claim on her Schedule D on the advice of counsel, because it showed up on

the title report for her residence and she was advised that she had to list everything even though she disputes the debt to Defendant.  Debtor's Plan was confirmed with the Trustee's consent on May 29, 2012.

Defendant testified that, after Christine filed her bankruptcy petition, Bill offered to enter into a new agreement with Defendant.  Defendant filed Proof of Claim No. 15 on August 6, 2012, asserting his lien on Debtor's residence securing a claim in the stated amount of $242,014.20.  Ex. N.  Defendant testified that he began adding interest as of September 2006. Debtor filed an objection to Defendant's Proof of Claim asking that it be reclassified as a general unsecured claim because there was insufficient value to secure Defendant's lien.  Ex. 10.  She filed an amended objection, Ex. 11, on the ground that Defendant's Mechanic lien is invalid as a mechanic's lien.[6]

The Trustee moved to vacate the order confirming Debtor's Plan.  That motion was denied on September 6, 2013, by the Court which noted that the Debtor may be required to modify her plan.

## DISCUSSION

### A.  Contentions of the Parties.

Green Tree's pre-trial brief contends that Defendant's Mechanic Lien does not satisfy the Montana statutes governing a construction lien, and does not satisfy the statutes governing mortgages because there are no words granting Defendant a lien against Debtor's residence, and

---

[6]The Court overruled both of Debtor's objections to Defendant's claim on March 6, 2013, on the grounds they were not served on the Defendant at the address listed on Claim 15 where notice should be sent, and because the relief requested required an adversary proceeding.  With the dismissal of the Debtor from this adversary proceeding, the Debtor's objections to Defendant's Proof of Claim are not before the Court.

11

the Mechanic Lien is not notarized.  Further, if the lien is enforceable Green Tree argues that the doctrine of equitable subordination gives its deed of trust priority over Defendant's lien because GMAC paid off the entire indebtedness secured by Option One's mortgage on Debtor's Residence, and subrogation would not work any injustice to the junior lienholder because Defendant stays in the same position.  Green Tree argues that Defendant should not be allowed an equitable lien, but even if Defendant is allowed an equitable lien it would be subordinate to Green Tree's subsequent deed of trust under *Amsterdam Lumber v. Dyksterhouse*, 179 Mont. 133, 141-43, 586 P.2d 705, 711 (1978).  Lastly, Green Tree contends that this Court has jurisdiction to hear and determine the validity, priority and extent of the parties' liens under § 157(b)(2)(K) even though the case involves a state law contract dispute between Defendant and Bill Staggs, and Bill's contention that Defendant promised to tear up the note and Mechanic Lien.

Defendant's pretrial brief argues that the promissory note, Ex. A, was signed by Christine and notarized, that it includes language that her residence would be security for repayment of the note, and the note was recorded with the Mechanic Lien.  Defendant contends that Christine listed his lien on her Schedule D as a valid obligation, and she did not raise the objection of lack of consideration or otherwise contest the validity of the obligation.  Defendant argues that Green Tree may not raise Christine's defenses questioning the validity of the note, and that equitable estoppel bars Green Tree from asserting Staggs' defenses.[7]

With respect to his lien, Defendant admits that the title "Mechanic Lien" is the "only

_____

[7]Defendant lists Christine's defenses as statutes of limitations, equitable estoppel, and the statute of frauds.

12

thing faulty" with his lien, and that otherwise it satisfies the Montana lien statutes because it includes a grant of the interest, is signed and includes the original notarized signatures of both Staggs, and includes the legal description of Debtor's residence.  Because his lien satisfies Montana's statutes governing security interests, Defendant contends, there can be no remedy of equitable subordination.  Defendant argues that there is no doubt that Green Tree is a subsequent encumbrancer to Defendant and had notice of his lien.

Green Tree's post-trial brief argues that Defendant's Mechanic Lien is not a valid lien because the promissory note was not a valid debt, and that Defendant could not create a valid lien simply by recording the note with his faulty Mechanic Lien.  Green Tree argues that the evidence shows that it did not have notice[8] of Defendant's Mechanic Lien according to its Ex. 14 and 17, and so it was not negligent.  Defendant's post-trial brief repeats that equitable subordination is not available to Green Tree because Staggs had agreed to not place any other liens on the residence until Defendant was paid off, and further asserts that Green Tree was negligent in examining the title record, which revealed the Staggs' note.

Because this Court concludes below that Defendant's lien is invalid with respect to Green Tree under Montana's lien statutes and therefore subordinate to Green Tree's deed of trust, the Court need not decide all of the contentions raised by the parties.  Thus, the Court herein does not decide the disputes between Defendant and Bill, which Defendant characterized in the PTO as "state law questions," and does not decide the Debtor's objection to Defendant's Proof of Claim.

---

[8]Green Tree argues that the addendum, Ex. C, does not show that it was recorded with the note and Mechanic Lien in Ex. 7.

This Court often considers and decides state law questions.  As the United States Supreme Court decision in *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594, 2616, 180 L.Ed.2d 475 (2011) noted, "property interests are created and defined by state law." *Id.,* (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)*).* The Bankruptcy Code contains references to State law, one example of which may be found at 11 U.S.C. § 522(a)(3)(A) (applying "State or local law" to exemptions). In *Stern*, the Supreme Court concluded that Congress, "in one isolated respect," exceeded the protections of Article III of the United States Constitution by conferring to bankruptcy courts the authority, under 28 U.S.C. 157(b)(2)(C), "to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S.Ct. at 2620. The Court agreed that the question presented was a "narrow" one. *Id.* at 2620.

The instant adversary proceeding does not involve a state law counterclaim by the estate under § 157(b)(2)(C), but rather is a core proceeding between creditors to determine the validity, extent, or priority of the parties' respective liens under § 157(b)(2)(K).  This determination is necessary to determine whether the Debtor's confirmed Chapter 13 Plan must be modified.  The Debtor and the estate are not parties in this adversary proceeding, although its result will have an effect on the claims allowance process. *See, e.g., Stern*, 131 S.Ct. at 2618.  As a result, this Court concludes that it has the constitutional authority under § 157(b)(2)(K) to determine the validity, extent, or priority of Defendant's lien with respect to Green Tree's deed of trust under State law.

**B. Liens**

14

In Montana liens are "creatures of statute." *In re Snavely*, 314 B.R. 808, 818 (9th Cir. BAP 2004). "How the lien is made to attach, to what extent and to what interest it attaches, are, within the restriction stated, matters to be determined by the terms of the statute granting it." *Id.*, quoting *McMillan v. Davenport*, 44 Mont. 23, 118 P. 756, 758 (1911). "[T]he lien statutes must be followed to the letter" and a "creditor who desires to obtain a lien must 'dot the i's and cross the t's.'" *Snavely*, 314 B.R. at 818.

Montana statute allows a lien to be created by contract of the parties or by operation of law. MCA § 71-3-102. A conveyance[9] "acknowledged or proved and certified and recorded as prescribed by law, from the time it is filed with the county clerk for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees." MCA § 70-21-302. Under Montana's "first in time is first in right" rule for priority of conveyances, MCA § 70-21-304, a conveyance of real property, other than a lease not exceeding 1 years, is void against any subsequent purchaser or encumbrancer of the same property whose conveyance is first duly recorded. *Brandt v. Esplanade of Cent. Mont., Inc., et al. (In re Esplanade of Cent. Mont., Inc.)*, 19 Mont. B.R. 162, 176 (Bankr. D. Mont. 2001); *Luloff v. Blackburn*, 274 Mont. 64, 68-69, 906 P.2d 189, 191 (1995).

Defendant argues that, because he recorded his lien before Green Tree recorded its deed of trust, his lien has priority under MCA § 70-21-304. That argument presumes, however, that Defendant's lien is valid. This Court construes MCA § 70-21-304 as determining lien priority of

---

[9]"Conveyance" as used in MCA §§ 70-21-302 through 70-21-204 "embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to real property may be affected, except wills. MCA § 70-21-301.

15

already existing liens, and like MCA § 70-1-306 which was construed in *Snavely*, MCA § 70-21-304 "is not a lien-creating statute." *See Snavely*, 314 B.R. at 817; *Wash. v. Slack*, 249 Mont. 56, 62, 813 P.2d 447, 451 (1991). Defendant's lien must be valid with respect to Green Tree under applicable Montana statutes.

Defendant contends that the title of Ex. B, "Mechanic Lien" is the "only thing faulty" with his lien, and that otherwise it satisfies the Montana lien statutes. This Court will consider below whether Defendant's lien satisfies the requirements of Montana law for a mortgage. However, Defendant's contention that the title of Ex. B is the only thing faulty ignores the very first sentence of Ex. B following the title, where Defendant and his wife "claim a mechanics lien pursuant to Title 71, Chapter 3, of the Montana Code Annotated." Ex. B.

Chapter 3 of Title 71 governs "Liens[10]." The list of liens in Chapter 3 does not include "mechanics' liens." Defendant claims a lien based on the Mechanic Lien in Ex. B and 7. It is not just the title of Ex. B as Defendant argues which is faulty, but rather the opening sentence which claims the lien under Title 71, Chapter 3, MCA. Defendant offered no evidence, and offered little if any argument that his lien satisfies the requirements for any of the liens listed in Chapter 3. Construction liens provided for at Part 5 of Title 71, Chapter 3, MCA, appear to be the closest thing to a mechanic's lien, but only a person who furnishes services or materials pursuant to a real estate improvement contract may claim a construction lien. MCA § 71-3-523.

---

[10]Chapter 3 includes federal tax liens, liens for wages and salaries, farm laborers's liens, construction liens, loggers' lies, crop liens for seed or grant and liens for hail insurance, threshers' liens, fertilizer and pesticide liens, labor and material liens on oil and gas wells and pipelines, liens of certain health care providers, agisters' liens and liens for service, liens for sellers and purchasers of real property, hotel liens, miscellaneous liens, and oil and gas owners' liens.

16

No evidence exists in the record that Defendant furnished Christine with services or materials pursuant to a real estate improvement contract.  Ex. B completely fails the requirements of the notice of right to claim a construction lien provided at MCA § 71-3-532, and fails to satisfy the lien notice content required under MCA § 71-3-536.  Defendant's own evidence, Ex. A, states that the note is for payment of several pieces of equipment in Montana and Mississippi. Based on this evidence, this Court finds and concludes that Defendant's Mechanic Lien is invalid and void as a lien claimed pursuant to Title 71, Chapter 3, MCA, as asserted in the first sentence of Ex. B.

### C. Mortgages.

A mortgage is a "contract by which specific property is hypothecated for the performance of an act, without the necessity of possession."  MCA § 71-1-101.  A mortgage also is a lien upon everything that would pass by a grant of the property.  MCA § 71-1-103.  A mortgage of real property can be created, renewed, or extended "only by writing, with the formalities required in the case of a grant of real property."  MCA § 71-1-203.  Real property may be mortgaged "to secure existing debts, to secure debts created simultaneously with the execution of the mortgage, and to secure advances then in contemplation but to be made in the future."  MCA § 71-1-201. Mortgages of real property "may be acknowledged or proved, certified, and recorded in the same manner and with the same effect as grants of real property."  MCA § 71-1-207.

MCA § 71-1-204 provides a suggested but not mandatory form of mortgage.  The suggested language from MCA § 71-1-204 includes:  "That the mortgagor mortgages to the mortgagee (here describe the property), as security for the payment to the mortgagor of ... dollars ...." Defendants Mechanic Lien, Ex. B, does not include the suggested word "mortgages."  Ex. B

17

is not signed by Christine or Bill Staggs.  It states that the "Fleischhauer's [sic] claim this lien against" Debtor's described residence.  Defendant contends that the missing grant language is provided by the note, Ex. A, which Defendant recorded with Ex. B.  At issue is whether Defendant satisfied the requirements of Montana's statutes by patching together and recording the note and Mechanic Lien.  This Court concludes that Defendant did not satisfy Montana's statutory requirements.

Ex. A includes the language that the "SECURITY of this loan will be the GRANTEES [sic] home at 429 SW Higgins Street in Missoula Montana."  That address is incorrect, although it is followed immediately thereafter by the correct legal description.  Christine's residence at 420 SW Higgins is correctly stated in the first paragraph of Ex. A, and in Ex. B.  Ex. 7 shows that Ex. A and B were recorded on January 7, 2008, but the addendum to promissory note, Ex. C, does not include a recording stamp like every other page of Ex. 7, indicating that Ex. C was not recorded.  By itself, the incorrect address on Ex. A is not fatal to Defendant's claim of lien.

The words "SECURITY of this loan will be GRANTEES home" are what Defendant contends satisfies the "grant" requirement for a mortgage.  The words "security of this loan will be" are not as clear and unambiguous as "mortgagor mortgages to the mortgagee ... as security for the payment ...." suggested by MCA § 71-1-204.  Nor are they as clear and unambiguous as the verb "grant" suggested in MCA § 70-20-103 ("Form of grant").  Christine testified that she did not draft Ex. A.  In cases of uncertainty in a contract, the language should be interpreted most strongly against the party who caused the uncertainty to exist.  MCA § 28-3-206.

The Montana Supreme Court in *Harbeck v. Orr*, 192 Mont. 243, 249, 627 P.2d 1217, 1220 (1981) concluded that the words "entitled to remain in possession thereof, rent-free, for the

18

rest of her life" are clear and unambiguous and plainly disclosed the intention to give to a mother a life estate in real property.  Christine did not sign Ex. C, and therefore whether she granted Defendant a lien on her residence which satisfies Montana statutory requirements for mortgage depends on the language of Ex. A alone.  One interpretation of "security of this loan will be" Christine's residence is a present grant of a security interest.  However, a different reasonable interpretation is that "will be" connotes a future grant.  The Court does not consider the words "Security of this loan will be" to be a clear and unambiguous present grant of a lien.

Further, in this Court's view neither did Defendant consider Ex. A sufficient to satisfy Montana's lien statutes, as evidenced by his actions in having Candace draft the Mechanic Lien, Ex. B, and record the two documents together.  If Defendant had considered Ex. A sufficient by itself to create a lien he would have recorded Ex. A alone.

"Although an unrecorded instrument is valid as between the parties and those who have notice thereof, MCA § 70–21–102, before a deed transferring real property can be recorded with the county clerk and recorder in a Montana county, its execution must be acknowledged by the person executing, and the acknowledgment must be certified by an official authorized to do so. [MCA 70–21–203]." *McWilliams v. Clem*, 228 Mont. 297, 305, 743 P.2d 577, 582 (1987).  The recording of a mortgage must be accompanied by the same formalities as a grant of real property. MCA §§ 71-1-203 and -207(1).

The Mechanic Lien of Ex. B and 7 does not satisfy these formalities.  Ex. B is not signed by Christine or Bill, and so there is no acknowledgment of their signatures on Ex. B which were required before Ex. B could be recorded.  MCA § 70-21-203; *McWilliams v. Clem*, 228 Mont. at 305.  This Court will not make the leap requested by Defendant and patch Christine's signature

19

from Ex. A onto Ex. B, a document dated more than a year after Christine signed Ex. A. "The lien statutes must be followed to the letter." *Snavely*, 314 B.R. at 818. "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." MCA § 1-4-101. Ex. B did not satisfy the requirements of Montana law and was recorded without satisfying the requirements of Montana law. Not having been properly acknowledged, Ex. B could not be recorded pursuant to MCA § 70-21-203.

**D. Equitable lien.**

In the PTO Green Tree raises the issue of whether Defendant has an equitable lien, and argues that an equitable lien would be subordinate to its deed of trust. Defendant argues that Green Tree had notice and knowledge of his lien, so his lien has priority.

A common maxim of equity states that "one seeking equity must do equity." *In re Marriage of Cox* (1994), 266 Mont. 67, 71, 878 P.2d 903, 906. Christine's testimony that she never received any of the $150,000 and did not receive any of the equipment is uncontroverted. The testimony of Defendant and Bill is contradictory. Bill testified that he did not receive title to the equipment and does not have possession. Defendant testified that he gave Bill the equipment titles. Bill is not a party in this adversary proceeding, and neither is Christine after she was dismissed. Defendant is a party; the Court may reasonably expect that a party could offer evidence in the form of a bill of sale or equipment titles, which should be issued by some government entity, in order to support a plea for equitable relief. The Court does not see in the record evidence sufficient to persuade the Court to grant Defendant equitable relief against Green

20

Tree.

Case authority exists providing for an equitable mortgage between parties to a trust indenture, when the trust indenture was for a tract that exceeded the statutory size limit. *Amsterdam Lumber*, 586 P.2d at 710-11.  The Montana Supreme Court held that, while the equitable mortgage could be enforced between the parties as an equitable lien, it was subordinate to the claims of subsequent encumbrancers who extended creditor subsequent to the date of the instrument without actual knowledge of the existence of the indenture.  *Brandon v. GMAC Mortg.,* LLC, 2012 WL 5304701, *2 (D. Mont.), quoting *Amsterdam Lumber*.

In affirming a decision of this Court, the district court noted that *Amsterdam Lumber* "stands in contradistinction to Section 71-1-321" which was enacted after *Amsterdam Lumber*. *Brandon*, 2012 WL 5304701 at * 2.  Section 71-1-321 provides that a non-conforming trust indenture is treated as a statutory mortgage "subject to all laws relating to mortgages on real property." *Brandon* at * 2.  As in *Brandon*, Defendant's Mechanic Lien must be construed under Montana's mortgage statutes, under which the Court has concluded that it is invalid and subordinate with respect to Green Tree.

Because this Court has concluded that Defendant's lien is invalid and subordinate to Green Tree's deed of trust under Montana's mortgage and lien statutes, it is not necessary for the Court to discuss or decide issues of equitable subrogation or the parties' other contentions.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of the above-captioned Chapter 13 case under 28 U.S.C. § 1334(a).

2.  The complaint and counterclaim to determine the validity, extent, or priority of Green

21

Tree's and Defendant's respective liens are core proceedings under 28 U.S.C. § 157(b)(2)(K).

3.  Defendant's Mechanic Lien is invalid and void as any of the liens provided under MCA Title 71, Chapter 13.

4.  Defendant's Mechanic Lien is invalid and subordinate with respect to Green Tree's deed of trust under Montana statutes law governing grants of real property and mortgages, and in addition for failure to satisfy Montana acknowledgment statutes with respect to the Mechanic Lien.

5.  Defendant's Mechanic Lien is subordinate to Green Tree's deed of trust as an equitable mortgage because of his failure to follow Montana's mortgage statutes to the letter.

**IT IS ORDERED** a separate Judgment shall be entered against the Defendant in favor of Plaintiff Green Tree, providing that Defendant's Mechanic Lien is invalid and subordinate with respect to Green Tree's deed of trust against Debtor's residence located at 420 SW Higgins in Missoula, Montana.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

22